**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

UNITED STATES OF AMERICA,                   Criminal No. 07-431 PJS/AJB

           Plaintiff,

v.                                **REPORT AND RECOMMENDATION**

(1)     STEPHEN C. CROWN,
(3)     EVAN S. CROWN, and
(4)     SCOTT A. BURCH,

           Defendants.

     Kimberly A. Svendsen, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

     Charles L. Hawkins, Esq., and Howard I. Bass, Esq., for defendant Stephen C. Crown;

     Howard I. Bass, Esq., for defendant Evan S. Crown; and

     Douglas Olson, Esq., for defendant Scott A. Burch.

        This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on March 20, 2008, at the U.S. Courthouse, 300 South Fourth St., Minneapolis, MN 55415. The Court issued separate Orders on Motions dated March 24, 2008, reserving motions to suppress search and seizure evidence, a motion to suppress statements, and motions for severance for submission to the district court on report and recommendation.

        Based upon the file and documents contained therein, along with witness testimony and exhibits received at hearing, the magistrate judge makes the following:

**Findings**

**Search Warrants.**  On November 29, 2004, United States Magistrate Judge Ian H. Levin, Northern District of Illinois, issued two separate warrants authorizing package and letter searches.  One of the warrants authorized the search of a particularly described UPS Express package (Hearing Exh. No. 5) and the other warrant authorized the search of 50 designated letters at a Mail Box, Etc. (Hearing Exh. No. 6).  The object of each of the warrants was identified as being evidence of the commission of criminal offenses, i.e. mail fraud.   The warrants were issued on the basis of probable cause contained in the separate Affidavits of United States Postal Inspector Jay R. Francis.  Evidence submitted to establish probable cause to search the UPS package was obtained by review of U.S. Postal Service mailing forms and applications, surveillance, questioning an investigation target, traffic stop and a vehicle consent search.  Evidence submitted to establish probable cause to search the Mail Box, Etc. letters was obtained by review of U.S. Postal Service mailing forms and applications, along with a determination that a substantial number of the letters were abandoned mail.

On April 12, 2005, United States Magistrate Judge James M. Hopkins, Southern District of Florida, issued a warrant authorizing the search of a particularly described residential location in Wellington, Florida (Hearing Exh. No. 8), further described in the supporting affidavit (Hearing Exh. No. 7) as the residence of defendant Stephen Crown.  The search warrant identified the objects of the warrant as documents indicating control of the premises; records relating to vending machine businesses; certain training and promotional materials; sales and financial records; customer files and lists; solicitation materials; customer correspondence; purchase and sales records; mailing and shipping documents; postal and rental box keys; cash and checks; recordings; cell phones; telephone records; employee and contractor identification documents; commission ledgers; journals and financial records;

business and personal banking records; banking correspondence; government communications; vending machine merchandise and machines; vending merchandise records and contracts; merchandise distribution documents; storage containers; identification cards; fax machines; specified business documents; identifications of particular individuals; computer stored materials; and computers, peripherals, electronic storage devices, software and manuals, computer access items, passwords and e-mails.  The warrant was issued on the basis of probable cause contained in the Affidavit of United States Postal Inspector Jay R. Francis, including witness interviews, record and document reviews, surveillance, trash searches, and review of telephone records.

**Trash Pulls.**  On approximately 25 occasions from June 23, 2004, through April 15, 2005, United States Postal Inspector Wilfred E. Hills recovered trash from locations outside the homes of defendants Stephen Crown and/or Evan Crown (Hearing Exh. No. 1).[1]  Generally, trash pick ups were made twice a week, on Wednesdays and Saturdays, and Inspector Hills typically obtained the trash from curbside on the night before a scheduled garbage pick up, although on one occasion Inspector Hills asked the trash collector to recover and preserve the particular garbage during a day-time pick up.  In that instance the Inspector observed the trash hauler retrieve the garbage at the curb and take actions to keep it separated from other trash before delivering it to the agent.  Afterwards, the truck driver was given $10 for his efforts, though he had not requested nor been promised any such reward.  Following each trash pick up the garbage was secured as evidence and was subsequently sent to Postal Inspector Jay Francis for further examination.

---

[1] Summary of trash pull dates and sites compiled from original logs.

**Statements and Vehicle Stop and Search.** On June 22, 2004, U.S. Postal Inspector Jay Francis, along with Inspectors Wilfred Hill and Leo Allen, confronted a man outside a UPS Store located in a strip mall in Delray Beach, Florida. The postal inspectors were dressed in business casual attire and were not carrying firearms. They correctly suspected that the person was defendant Stephen Crown, though on inquiry the man identified himself as Mike Owens. After introducing themselves the inspectors asked the man about a package that he had just picked up at the UPS Store. During the meeting on the public sidewalk the inspectors made no physical contact with the defendant and made no threats or promises to him to obtain cooperation. The defendant was not impaired by drugs or alcohol, he understood questions presented to him, and his answers were appropriate to the questions. The interview/meeting lasted approximately five minutes, after which the defendant was not arrested and the inspectors left him alone, though they continued surveillance. The defendant was observed going into a Winn Dixie store and a McDonalds restaurant and otherwise stroll about the strip mall parking area for approximately 20 minutes, until getting into a black Cadillac, license number TCB-0, registered to Stephen Crown. When exiting the parking area the driver, defendant Stephen Crown, backed out into the wrong lane before proceeding to drive away. The inspectors followed in an unmarked car, sometimes at high speed. The agents attempted to make a vehicle stop by activating a siren and stop lights, but the defendant continued driving until a Delray Beach Patrolman, Officer Gaines, was contacted for assistance and made a roadside stop based upon erratic driving behavior. The Cadillac driver produced identification in the name Stephen Crown. Inspector Francis now asked the defendant if he would consent to a search of the vehicle. The inspector prepared a written Consent to Search form (Hearing Exh. No. 2) which was reviewed and

4

signed by Mr. Crown and witnessed by Jay Francis and another officer. Several items, including the UPS package/envelope were seized from the vehicle.

Following the vehicle search Inspector Francis asked the defendant if he would be willing to go to the Delray West Post Office for further interview. Mr. Crown agreed and followed the inspectors separately in his own vehicle. Inspectors Francis and Hill and Stephen Crown thereafter met in an interview room approximately 8 feet by 10 feet in size and containing a table and three chairs. The inspectors were dressed in business casual attire and did not carry firearms. The <u>Miranda</u> rights were given to Crown at the onset of the meeting and the defendant reviewed and signed a written Warning, though he declined to sign the Waiver portion of the form (Hearing Exh. No. 3). An interview was then conducted during which the defendant did not request to speak with an attorney and did not refuse to answer questions or ask that the interview cease. The tone of the discussions was casual and there was no yelling. No threats or promises were made to induce the defendant's cooperation, and he understood the questions put to him. The interview lasted approximately 30 minutes, and defendant Stephen Crown thereafter was not arrested and was permitted to leave the office.

On September 23, 2004, Stephen Crown left a telephone message with Inspector Francis regarding a request for consent to search a UPS package. The phone message from Mr. Crown was recorded (Hearing Exh. No. 4).

Another interview with defendant Stephen Crown was conducted by Inspector Francis on May 24, 2005, at the West Palm Beach Domicile, a sub-office of the Postal Inspection Office in West Palm Beach, Florida. Mr. Crown appeared at the interview with an attorney, John Cleary. Inspector Francis was dressed in business casual attire and was not carrying a firearm. No threats or

5

promises were made during the interview to induce defendant's cooperation, there was no physical contact between the inspector and Mr. Crown, and the defendant was sober and understood the proceedings and questions put to him. The meeting lasted approximately one to one-and-a-half hours and was recorded (Hearing Exh. No. 10). At the end of the meeting Inspector Francis read and presented a written form Warning and Waiver of Rights which the defendant signed with respect to both the acknowledgment of rights portion and the waiver portion, as amended in handwriting to reflect the presence of an attorney (Hearing Exh. No. 9). The document was witnessed by the defendant's attorney, Mr. Cleary, and Postal Inspector Jay Francis.

Based upon the foregoing Findings, the magistrate judge makes the following:

## **Conclusions**

**Severance.** Pretrial severance of this action for separate trials of co-defendants is not required. Defendants Stephen C. Crown, Evan S. Crown, and Scott A. Burch have not made the requisite showing in this case that severance is necessary to avoid risk of compromising any specific trial right to which a defendant is entitled or that severance is necessary to prevent the jury from making a reliable judgment as to any defendant's guilt or innocence.

Two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of incidents constituting an offense or offenses. Fed. R. Crim. P. 8(b). There is a preference in the federal system for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 937 (1993). The co-defendants in this matter have been charged by superseding indictment on the offenses of conspiracy to commit mail fraud, multiple counts of mail fraud, conspiracy to commit money laundering, and multiple

counts of concealment of money laundering.  Under these circumstances, the general rule in the federal system is that the co-defendants should be tried together.  The court may grant a severance of defendants if it appears that a defendant is prejudiced by a joinder of defendants at trial.  Fed. R. Crim. P. 14.  A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 113 S.Ct. at 938.

        Defendants offer no particularized argument, apart from citing the existence of statements by co-defendants, and they assert no specific prejudice arising out of the likelihood that a co-defendant will argue and seek to introduce testimony exonerating himself and implicating another defendant in charged offenses.  The present factual record in this case offers no compelling indication as to how any particular defendant is prejudiced by joinder with the other defendants in this case to the extent necessary to overcome the preference for joinder in cases of this nature.  In any event it is certainly not an extraordinary occurrence that one defendant would be pointing the finger at another, and it is not patently apparent that a jury would be unable to distinguish and apply the evidence relating to one defendant from evidence relating to other defendants.  Joinder of defendants in this case was not improper and severance is not required.

        **Search Warrants.**  Evidence seized pursuant to two separate warrants to search a particularly described UPS package and 50 letters from a Mail Box, Etc. location  (Hearing Exh. Nos. 5 and 6), was not unlawfully obtained in violation of the constitutional rights of either defendant Stephen Crown or defendant Evan Crown.  The postal search warrants were both issued on November 29, 2004, and both were based upon sufficient probable cause as stated in the separate Affidavits of United

States Postal Inspector Jay R. Francis, and as determined by United States Magistrate Judge Ian H. Levin.  Each of the warrants properly and sufficiently identified the particular packages to be searched.  The search warrants issued in the Northern District of Illinois were lawfully issued and there is no requirement for suppression of evidence seized pursuant to either of the warrants.

Evidence seized pursuant to a warrant to search a particularly described residence in Wellington, Florida  (Hearing Exh. No. 8), was not unlawfully obtained in violation of the constitutional rights of defendants Stephen Crown or Evan Crown.  The residence search warrant was issued on April 12, 2005, and was based upon sufficient probable cause as stated in the Affidavit of United States Postal Inspector Jay R. Francis and as determined by United States Magistrate Judge James M. Hopkins.  The warrant properly and sufficiently identified the location of the search and the items to be seized.  The search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the Southern District of Florida warrant.

**Trash Pulls.**  The warrantless search of garbage seized from the curb near the residences of defendants Stephen Crown and/or Evan Crown (Hearing Exh. No. 1) was not unlawful and suppression of evidence seized pursuant to such trash seizures is not required.  In each instance the trash had been placed on the curb for collection.  The appropriate focus is upon "whether the garbage was readily available to the public so as to render any expectation of privacy objectively reasonable." United States v. Comeaux, 955 F.2d 586, 589 (8th Cir. 1992)(citing United States v. Hendrick, 922 F.2d 396, 400 (7th Cir. 1991)).  The testimony in this case is that the garbage was not within the curtilage of the home and was clearly on the curb for the purpose of disposal.  It is of no consequence in this instance that on one of the dates the pick up was made with the assistance of a trash company

employee. The trash that was searched was available to the public on each occasion and defendant had no objectively reasonable expectation of privacy in the trash.

**Statements and Consent Search**

**Strip Mall Interview.** Defendant Stephen Crown's statements to U.S. Postal Inspectors on June 22, 2004, on a strip mall sidewalk, were non-custodial voluntary statements and were not obtained in violation of defendant Stephen Crown's constitutional rights. The defendant was not under arrest at the time statements were made, and he was not confined or detained. He was not arrested following the meeting, and he was free to leave the scene. Suppression of Stephen Crown's June 22, 2004, statements at the Delray Beach strip mall is not required.

**Vehicle Stop and Search.** The stop of the vehicle driven by defendant Stephen Crown on June 22, 2004, was lawfully based upon an officer's observation of erratic driving behavior, as well a probable cause to believe that the driver had falsely identified himself to law enforcement officers. The vehicle stop did not violate the defendant's rights under the United States Constitution.

The search of defendant Stephen Crown's Cadillac on June 22, 2004, was lawfully conducted pursuant to valid written consent (Hearing Exh. No. 2). Considering the totality of the circumstances, the consent was voluntary and was not a product of duress or coercion, express or implied. U.S. v. Hathcock, 103 F.3d 715, 719 (8th Cir 1997)(citing Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048 (1973)). Defendant Stephen Crown's rights with respect to a consent search, including the right to refuse consent and the right to withdraw consent, were properly presented to him, and he was fully able to understand the consent form and his right to withhold consent. He does not assert that he was subjected to threats, coercion, promises or

misrepresentations, and he never objected to the search or requested that it be stopped, despite being provided written advisory of such rights. Furthermore, defendant makes no assertion that his age, education, experience, or other circumstances weigh against is ability to give valid consent. Under these circumstances, the consent to search the vehicle was voluntary and the search was lawful. United States v. Carrate, 122 F.3d. 666, 670 (8th Cir. 1997).

**Post Office Interview.** Defendant Stephen Crown's statements to U.S. Postal Inspectors on June 22, 2004, in an interview conducted at the Delray West Post Office, were non-custodial and were made voluntarily, and were not obtained in violation of the defendant's constitutional rights. The defendant was not under arrest at the time statements were made and was not arrested following the interview. He was not confined in any manner; he was free to leave at any time during the interview; and following the meeting he left the location without interference from agents. Furthermore, Mr. Crown was expressly advised of his Miranda rights at the onset of the meeting, and the defendant reviewed and signed a written warning, therein acknowledging his understanding of his rights, even though he declined to sign an express waiver of rights (Hearing Exh. No. 3). In any event, an express waiver of rights is not required, and waiver is properly inferred, under circumstances whereby the defendant expressly acknowledges and understands each of his rights and voluntarily makes statements in light of the Miranda rights that had just been given. United States v. Mears, 614 F.2d 1175, 1178 (8th Cir. 1980)(citing Hughes v. Swenson 452 F.2d 866, 867-68 (8th Cir. 1971)). Defendants statements were not solicited in violation of his right to remain silent or right to the presence of an attorney during questioning. There was no coercion, defendant's freedom to depart was not inhibited and the interview did not take place in a coercive environment. See: Oregon v. Mathiason, 429 U.S.

492 (1977). Suppression of Stephen Crown's June 22, 2004, post office interview statements is not required.

**Recorded Telephone Message.** Defendant Stephen Crown's statements made on September 23, 2004, in a recorded telephone message (Hearing Exh. No. 4) were not obtained in violation of the defendant's constitutional rights and suppression of the statements is not required. Defendant Stephen Crown's recorded comments were spontaneous and voluntary and were not made in response to interrogation by a law enforcement officer. The remarks were made while defendant was not in custody, they were not made in response to law enforcement interrogation, and they were not the product of an unlawful arrest. Because the statements were spontaneous and were not a consequence of police interrogation, they were not obtained in violation of the defendant's Fifth Amendment privilege against self-incrimination or other rights under Miranda. Furthermore, the statements were not the result of defendant's will being overborne through police coercion or pressure and were not obtained in violation of defendant's Fifth Amendment Due Process rights on that account. See United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005).

**Interview with Attorney Present.** Defendant Stephen Crown's recorded statements to U.S. Postal Inspector Jay Francis in an interview conducted on May 24, 2005, at the West Palm Beach Domicile, were non-custodial, were made voluntarily, were made in the presence of defendant's personal attorney, John Cleary. The statements were not obtained in violation of the defendant's constitutional rights. The defendant was not under arrest at the time statements were made and was not arrested following the interview. He was not confined in any manner; he was free to leave at any time during the interview; he was permitted to consult with his attorney during questioning, and afterwards he

left the location without interference. Mr. Crown was expressly advised of his Miranda rights at the end of the meeting, and the defendant reviewed and signed a written warning and waiver of rights, therein acknowledging his understanding of his rights, indicating the presence of an attorney, and expressly stating the absence of threats, promises or coercion in the course of the interview. (Hearing Exh. Nos. 9 and 10). Defendants statements were not solicited in violation of his right to remain silent or right to the presence of an attorney during questioning. There was no coercion, defendant's freedom to depart was not inhibited and the interview did not take place in a coercive environment. See: Oregon v. Mathiason, 429 U.S. 492 (1977). Suppression of Stephen Crown's May 24, 2005, West Palm Beach Domicile interview statements is not required.

Based upon the foregoing Findings and Conclusions, the magistrate judge makes the following:

**RECOMMENDATION**

The Court **hereby recommends** that:

1. Defendant Steven Crown's Motion for Severance of Defendants be **denied** [Docket No. 105];

2. Defendant Steven Crown's Motion to Suppress Statements be **denied**  [Docket No. 106];

3. Defendant Steven Crown's Motion to Suppress Evidence Obtained through Illegal Search be **denied**  [Docket No. 107];

4. Defendant Evan Crown's Motion for Suppression of Illegally Seized Evidence be **denied**  [Docket No. 64];

12

5. Defendant Evan Crown's Motion for Severance be **denied** [Docket No. 90]; and

6. Defendant Scott Burch's Motion for Severance of Defendant be **denied** [Docket No. 119].

Dated:     April 1, 2008

    s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before April 16, 2008.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.